1  MICHAEL NASATIR (SBN 38121)
2  NASATIR, HIRSCH, PODBERESKY, KHERO & GENEGO
   2115 Main Street
3  Santa Monica, California 90405
   Telephone (310) 399-3259
4  Facsimile (310) 392-9029
   Email: mdnasatir@aol.com
5

6  Attorney for Defendant
   SAMUEL JONES, III
7

8
                    UNITED STATES DISTRICT COURT
9
                 FOR THE CENTRAL DISTRICT OF CALIFORNIA
10

11

12 UNITED STATES OF AMERICA,        )   Case No. CR 09-00501-RHW-1
                                    )
13                Plaintiff,        )   DEFENDANT'S OBJECTIONS TO
                                    )   THE PSR
14        v.                        )
                                    )
15 SAMUEL JONES, III                )   Sentencing Date: June 22, 2011
                                    )   Court: Hon. Robert H. Whaley
16                Defendant.        )
                                    )
17                                  )

18      Defendant SAMUEL JONES, III, by and through his counsel of record, Michael D.
19 Nasatir, hereby submits his Objections to the Presentence Report.
20      Defendant reserves the opportunity to make additional comments through counsel at
21 the sentencing hearing in this matter.

22 Date: May 2, 2011                    Respectfully submitted,
                                        NASATIR, HIRSCH, PODBERESKY, KHERO
23                                      & GENEGO

24
                              By            /s/
25                                      MICHAEL D. NASATIR
                                        Attorneys for Defendant
26                                      SAMUEL JONES, III

27

28

## I. INTRODUCTION

In the Presentence Report (dated 4-21-2011), the United States Probation Office recommends that the Defendant, Sam Jones, III, receive a non-guideline term of imprisonment of 70 months (See Probation Office's Letter of Recommendation, Page 1). The recommended sentence represents a four-level downward variance from the Probation Office's advisory guideline calculations.

Mr. Jones has three principal objections to the Presentence Report. First, Mr. Jones objects to the statement of "Offense Conduct" as it fails to accurately state the complete facts and circumstances surrounding his involvement in the crime (para. 10-16 of the PSR). As set forth more fully below, Mr. Jones would never have involved himself in the oxycodone deal had he not been absolutely convinced that his childhood friend, Tom Cataloni, was at serious risk of being harmed by the Mexican drug cartel.  Second, Mr. Jones objects to the Probation Officer's determination that a role reduction should not apply (para. 31 of the PSR). A minor role adjustment pursuant to U.S.S.G. §3B1.2(b) was agreed upon by the parties as it accounts for Mr. Jones' limited role in the overall offense conduct. Third, the PSR fails to apply the offense adjustment under 2D1.1(a)(5) resulting in a three level reduction of the base offense level.

## II. OFFENSE CONDUCT

Paragraphs 10-16 of the PSR set forth the offense conduct underlying this case. The PSR, however, fails to provide this Court with the complete picture. Sam Jones has never before been convicted of a crime.  He is a successful television and film actor, who has dedicated years to his profession.  His involvement in this case arises not out of greed or financial desperation; rather, Mr. Jones' decision to participate in this drug transaction was motivated out of his desire to help his childhood friend Tom Cataloni.  It was Mr. Jones' belief that Tom Cataloni was in danger of being injured or killed due to his involvement in an earlier drug transaction gone awry. It was Mr. Cataloni's plea for help that brought Mr.

Jones into this transaction, convinced that his friend owed a Mexican drug cartel substantial sums of money.

Months before this case started, the same DEA agents who are involved in this case sold Eric O'Connell, Steven Ciccio, Mark Gordon Collins and Tom Cataloni 586 pounds of marijuana worth more than $200,000.  After the agents delivered the marijuana to Cataloni, they stopped the truck loaded with marijuana; robbed Ciccio of their own marijuana; blamed Cataloni for the loss; and told Cataloni that he owed a $90,000 debt to a Mexican drug cartel. Sam Jones was not involved in this transaction.

To resolve this debt, the undercover DEA agent, Pandya, told Cataloni that he had to do another drug transaction to make good for the lost marijuana. Cataloni, short on money agreed to do the deal, and scared that he was in danger for his life, called on his longtime friend Sam Jones. It was only because of the desperate situation Cataloni was facing, that Mr. Jones decided to become involved.

In an acting job that fooled even a veteran actor such as Mr. Jones, SA Pandya of the DEA made it clear during the April 24, 2008 meeting, which Mr. Jones attended, that Cataloni was in serious trouble with a Mexican drug organization. Indeed, the message conveyed by SA Pandya was that Cataloni was going to pay and "they" were going to come find him if he did not make things good.[1] By the end of this meeting, Mr. Jones was more

---

[1] Tom Cataloni, in an attempt to deflect blame from himself for the earlier marijuana deal gone awry (the first reverse sting that led to the $90,000 debt), comments at that meeting that the marijuana suppliers probably did not actually lose any money because of their mark-up on the marijuana. In response to Mr. Cataloni, SA Pandya states:
>Dude I mean but here's the thing that they're looking at basically you know, these people don't give a shit, you can buy one white girl, you buy 1000 white girls you fuck em over why they want to come back to you it would cause them a problem *they'll come and deal with you in whatever way they need to* [emphasis added].

In front of Mr. Jones, SA Pandya expands the threat later in the same conversation:
>…before they start doing business they want to know who the hell you guys are because, its just, in this type of work that we're in they want to make sure, you know, that *you default on a loan, its not like I'm declaring bankruptcy and walking away because they're gonna come find you.  There's no doubt about it…* [emphasis added].

*(cont'd)*

convinced than ever that his childhood friend was in serious danger and in grave need of his assistance.

While, the Probation Officer has expressed some doubt as to Mr. Jones' reason for becoming involved with Mr. Cataloni in a drug deal (Letter from Probation to the Court at 4), the Probation Officer did not have before her detailed information regarding the length and depth of the friendship that bound these two men together. *See* Defendant's Sentencing Memorandum to be filed on or before May 6, 2011. Moreover, the Probation Officer's suggestion that Mr. Jones could have simply repaid the UC on Cataloni's behalf, is a reasonable solution, but not one ever made available to Mr. Jones. Rather, SA Pandya made it clear that "they" wanted Cataloni to work off his debt by engaging in a further drug transaction.

### III.     MINOR ROLE

The Probation Officer finds that neither a role reduction nor a role enhancement is appropriate in this case. (para. 31 of the PSR) The parties have reached a plea agreement in this case which is the result of months of careful analysis and discussion of all the relevant facts. The result of those discussions, giving consideration to the full panoply of conduct underlying this case, makes it evident that Mr. Jones played a limited role.

This case begins not with Sam Jones, but with Eric O'Connell, Steven Ciccio, Mark Gordon Collins and Tom Cataloni negotiating a large marijuana deal with undercover DEA agents. It is only after the DEA makes it appear that this deal has gone amiss and convinced Cataloni that he is in serious trouble with a Mexican drug cartel, that Sam Jones becomes involved. Prior to his involvement, there is no evidence that Mr. Jones knew the detailed characteristics of Oxycodone. It was Cataloni who knew about Oxycodone, and who

---

(cont'd from previous page)
    SA Pandya then goes on to say that his drug organization even has attorneys working on the case to try and find out what happened in the marijuana deal, and that he (SA Pandya in his undercover role as "Amir") spoke with the cartel people to plead Tom's case. The gist of it is that Tom will be forgiven as long as he does more drug deals with SA Pandya.

4

prepped Sam Jones prior to the meeting with the undercover agent on the size, shape and markings of Oxycodone tablets.  As an experienced actor, Mr. Jones unfortunately played his part at the meeting too well. His inexperience in these matters, and lack of involvement, is borne out by the fact that his contribution to this drug deal, $37,500, was withdrawn directly from his bank account and is clearly traceable as the proceeds of his acting career.[2] It is only in this very limited role and single transaction, that Sam Jones has any involvement in a sting operation that spanned many months and hundreds of thousands of dollars of marijuana that Mr. Jones played no part in.[3] All of these circumstances support the minor role adjustment agreed to in the Plea Agreement.

### IV.  ADJUSTMENT UNDER SECTION 2D1.1(a)(5)

The PSR makes no adjustment to the base offense level pursuant to Section 2D1.1(a)(5). That Section allows for a three level decrease in the base offense level where the defendant receives an adjustment for mitigating role under Section 3B1.2 and where the base offense level is 34 or 36. This downward adjustment was contemplated by the parties in the plea agreement.

As set forth above, Mr. Jones was a minor participant in Cataloni-O'Connell-Ciccio-Collins drug organization.  He played no role whatsoever in the underlying marijuana deal that was the impetus for Oxycodone transaction set up by the undercover agent as a method by which Cataloni and his cohorts needed to pay back a fictitious Mexican drug cartel. Mr. Jones' only role was to come to the aid of a friend by participating in a crime for the sole purpose of preventing a perceived greater harm—i.e. the perceived threat and danger to the life of his friend, Tom Cataloni.

---

[2] Compare this to Cataloni and Collins who brought cash of unknown origin to the table.

[3] Moreover, SA Pandya's refusal to sell the lesser quantity of 5000 Oxycodone tablets for 50 percent down payment as requested by Cataloni, acted as the catalyst for Cataloni seeking out Mr. Jones' assistance. If the agent had agreed to sell 5000 tablets at $15 apiece for 50 percent down, as Mr. Cataloni had asked him to do, then Mr. Jones' money would not have been required in the first place and Mr. Jones would never have been involved.

This Court should thus find, consistent with the agreement between the parties, that a two point reduction for minor role is appropriate under Section 3B1.2(b), and as a result that the offense level of 34 should be reduced by 3 levels to a level 31.

## V. CONCLUSION

Underlying this case is a long and storied relationship between two boyhood friends who took very different paths in life. Mr. Jones worked hard to develop a successful acting career; Mr. Cataloni became a drug dealer. While their paths took very different directions, the bond between them remained strong. It is this very personal relationship between Mr. Jones and Tom Cataloni that caused Mr. Jones to become involved in this offense. His role, limited to helping Cataloni repay a debt to a Mexican drug cartel, merits a two level reduction for minor role, as he played no role in the large marijuana transaction negotiated by Cataloni and others with undercover DEA agents. This minor role also warrants, under Section 2D1.1(a)(5) of the Guidelines, a three level reduction in the offense level—from a level 34 to a level 31.

Date: May 2, 2011

Respectfully submitted:
NASATIR, HIRSCH, PODBERESKY, KHERO & GENEGO

By _____/s/_____
MICHAEL D. NASATIR
Attorneys for Defendant
SAMUEL JONES, III